PEPE (U.K.) LTD. and Pepe Clothing (U.S.A.), Inc., Plaintiffs,

v.

OCEAN VIEW FACTORY OUTLET CORP., a Puerto Rico Corporation; Natural Prints Corp., Inc., a Puerto Rico Corporation; Efrain Rios Morales; Awilda Morales Berrios, the conjugal partnership of Efrain Rios Morales and Awilda Morales Berrios, and Luis Padilla, Defendants.

PEPE (U.K.) LTD. and Pepe Clothing (U.S.A.), Inc., Plaintiffs,

v.

PUERTO RICO BLANTOR, INC., a Puerto Rico Corporation; Andres Rivera Rodriguez, the conjugal partnership of Andres Rivera Rodriguez and Carmen Nereida Rivera, and Carmen Nereida Rivera, in representation of her conjugal partnership formed with Andres Rivera Rodriguez, Defendants.

Civ. Nos. 91–1751 (JAF), 91–1753 (JAF).

United States District Court, D. Puerto Rico.

July 16, 1991.

---

Graham, Campaign & McCarthy, P.C., New York City by Steven H. Bazerman and Goldman, Antonetti, Ferraiuoli & Axtmayer, San Juan, P.R. by Eugenio Romero, Jorge Segurola, for plaintiffs.

Rivera, Tulla & Ferrer, Hato Rey, P.R. by Eric Tulla, for defendant Puerto Rico Blantor.

Dominguez & Totti, San Juan, P.R. by Etienne Totti, for defendant Luis Padilla.

## OPINION AND ORDER

FUSTE, District Judge.

On June 12 and 13, 1991, plaintiffs Pepe (U.K.) Ltd. ("Pepe (U.K.)") and Pepe Clothing (U.S.A.) Inc. ("Pepe (U.S.A.)") made *ex parte* applications for a seizure of T-shirts bearing the trademark PEPE. The items to be seized duplicated the appearance of various designs on T-shirts sold by plaintiffs. These were manufactured and/or sold by the defendants Ocean View Factory

Outlet Corp., Natural Prints Corp., Inc., Efraín Ríos Morales, Awilda Morales Berríos, the conjugal partnership of Efraín Ríos Morales and Awilda Morales Berríos (collectively "T-Shirts A Millón defendants"), Luis Padilla ("Padilla"), Puerto Rico Blantor, Inc., Andrés Rivera Rodríguez, the conjugal partnership of Andrés Rivera Rodríguez and Carmen Nereida Rivera, and Carmen Nereida Rivera, in representation of her conjugal partnership formed with Andrés Rivera Rodríguez (collectively "Blantor defendants"). On June 13, 1991, such orders were granted. Seizures were conducted on June 15, 1991. On June 27, 1991 a hearing was held with regard to the propriety of such *ex parte* seizures and to ascertain whether the facts supporting the findings of fact and conclusions of law which gave rise to the original issuance of the orders were still valid.

At the hearing, the Blantor defendants appeared through counsel. They expressly did not contest the facts as set forth by plaintiffs in their original declarations or at the hearing, or the propriety of the conduct of the seizure, nor did they offer any evidence contrary to that offered by plaintiffs. The Blantor defendants, however, did contest whether the facts set forth in the original declarations and at the hearing were sufficient to legally justify the seizure. Defendant Luis Padilla did not object to the seizure. The T-Shirts A Millón defendants did not make an appearance, although defendant Efraín Ríos Morales did appear in court. Accordingly, this discussion will be limited to the legality of the seizure conducted of the Blantor defendants' facilities based on the uncontested evidence submitted by plaintiffs.

## I. BACKGROUND

Pepe Group PLC is a British Holding Company, which through subsidiaries and related companies is in the business of designing, licensing, sourcing, wholesaling, and marketing coordinated ranges of casual clothing and related accessories under the trademark PEPE throughout a large part of the world, including the United States and the Commonwealth of Puerto Rico. The trademark PEPE is owned by a wholly-owned subsidiary, plaintiff Pepe (U.K.).

Pepe (U.K.) owns seven U.S. trademark registrations on the principal register directed to the mark PEPE alone or in combination with other words or designs. No evidence has been offered that these registrations are other than valid, subsisting and in full force and effect. Pepe (U.K.)'s exclusive distributor and licensee in the United States is Pepe Clothing (U.S.A.).

Clothing bearing the trademark PEPE has been extensively sold in Puerto Rico. In the fiscal year ending March 1991, over thirteen million dollars worth of genuine PEPE trademarked clothing were sold at retail. These goods have been well advertised in Puerto Rico.

Pepe T-shirts come with a number of different designs imprinted on the shirt, including, specifically, (a) the Pepe house logo consisting of an oval design with the mark PEPE in the center with three lines extending from each end of the oval and the word "World" in a banner above and the word "Service" in a banner below the PEPE name ("the World Service logo"), (b) the words PEPE CO surrounded by two curved lines and the word "London" underneath the bottom curved line ("Pepe Co London"), (c) the Pepe World Service logo with a circular design above and a rectangular box below surrounding the words "Specialized International World Wide Clothing" and the PEPE mark ("Pepe Special"), and (d) the mark PEPE positioned diagonally across a box with a repeating pattern of PEPE CO, in a plain sans serif typeface and the word "jeans" beneath the diagonal PEPE mark ("Pepe Crest"). Each of these designs were created by employees of Pepe (U.K.), and were first published in the United Kingdom after March 1, 1989, and more than thirty days thereafter in the United States. Pepe (U.K.)'s copyright in the Pepe World Service logo had been asserted both in the United Kingdom and in Hong Kong, where a seizure based on this copyright was obtained.

Defendant Puerto Rico Blantor, Inc. is in the business of printing T-shirts and selling

the same at wholesale and retail. Many of the designs imprinted by the Blantor defendants on T-shirts bear the trademarks of well-known companies. Among other T-shirts, they print T-shirts bearing the Pepe Co London and World Service logo designs. The World Service logo and Pepe Co London appear on T-shirts in a manner duplicating that of plaintiffs. In some cases, however, the World Service logo has been used in repeating patterns, in different sizes. In addition, the Blantor defendants print T-shirts with an enlarged version of the bottom box of the Pepe Special design. The Blantor defendants have also imprinted T-shirts with a design partially in Spanish which bears the trademark PEPE in large letters diagonally across the shirt with the word "jeans" underneath. This shirt contains a border of repeating PEPE CO in a plain sans serif typeface similar to that used in the Pepe Crest design.

The T-shirts are inferior in quality to those manufactured by Pepe insofar as they are made from 50% cotton, 50% polyester blend rather than pure cotton, are of a lighter weight and, in many cases, bear a clearly visible inferior imprint.

From one of the uncontested declarations submitted in obtaining the seizure order, Puerto Rico Blantor, Inc.'s own employee, in selling duplicates of Pepe T-shirts to an undercover detective, indicated that the Blantor defendants are aware that PEPE is a registered trademark which the Blantor defendants do not have a right to reproduce, but that Blantor reproduces such trademarks on T-shirts clandestinely.

On June 15, 1991, over 2,000 T-shirts bearing the PEPE mark as described above, along with various screens and acetates used in the production of such T-shirts were seized from the Blantor defendants. In addition, a limited number of business records dealing with the sale of T-shirts bearing the PEPE mark were also seized.

## II. DISCUSSION

The order of seizure of June 13, 1991 issued on three bases: (a) the counterfeiting of the registered trademark PEPE, pursuant to 15 U.S.C. § 1116(d); (b) unfair competition, through the printing and sale of T-shirts bearing the PEPE trademark and/or Pepe trade dress in violation of 15 U.S.C. § 1125 and Puerto Rico law pursuant to the inherent powers of this court; and (c) with regard to certain of the designs, for copyright infringement pursuant to 17 U.S.C. § 503 and Rules 3 through 13 of the United States Supreme Court Rules of Practice for Copyright Cases.

### A. *Seizure Under 15 U.S.C. § 1116(d)*

■ Section 34(d) of the Lanham Act (15 U.S.C. § 1116(d)) provides for a right of *ex parte* seizure when a defendant uses a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, if the court finds:

(i) an order other than an *ex parte* seizure order is not adequate to achieve the purposes of section 1114 of this title;

(ii) the applicant has not publicized the requested seizure;

(iii) the applicant is likely to succeed in showing that the person against whom seizure would be ordered used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services;

(iv) an immediate irreparable injury will occur if such seizure is not ordered;

(v) the matter to be seized will be located at the place identified in the application;

(vi) the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered of granting the application; and

(vii) the person against whom seizure will be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person.

At the time of request for the order of seizure, plaintiffs submitted declarations supporting their fulfillment of each of the

above conditions, including providing the court with copies of each of the trademark registrations under which plaintiffs claimed a right of seizure under 15 U.S.C. § 1116(d). The Blantor defendants have offered no evidence to contradict any of the submissions but rather argue that their acknowledged duplications of plaintiffs' T-shirts bearing the PEPE mark are not the use of a counterfeit mark as required by subsection (iii). As admitted by counsel for the Blantor defendants, the argument they offer is a technical one, *i.e.*, while plaintiffs have a number of registrations for the mark PEPE, none of the drawings of the registrations exactly duplicate the mark PEPE as it appears on the Blantor defendants' T-shirts. These T-shirts do, however, bear exact reproductions of plaintiffs' mark as actually used in the marketplace.

There is no question that the Blantor defendants' use of the mark PEPE infringes plaintiffs' registrations for the mark PEPE. It is uncontested that the registrations themselves are valid, subsisting, and in full force and effect. Defendants and plaintiffs use the mark PEPE on identical, if not equal quality, goods (*i.e.*, T-shirts) selling to similar customers. There has been ample evidence introduced as to both the strength of plaintiffs' mark PEPE and defendants' intent in adopting and copying the mark. *See Century 21 Real Estate Corp. v. Century 21 Real Estate, Inc.*, 929 F.2d 827 (1st Cir.1991); *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22 (1st Cir.1989). The question is whether the Blantor defendants' goods bear a counterfeit of a registered trademark, thus giving rise to a right of seizure under 15 U.S.C. § 1116(d).

Under 15 U.S.C. § 1116(d)(1)(A), a right of *ex parte* seizure arises when the defendants use a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services. A counterfeit mark is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods ... whether or not the

person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). 15 U.S.C. § 1127 defines "counterfeit" as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."

As noted in the Congress' joint report on trademark counterfeiting legislation,[1] the definition of "substantially indistinguishable" will need to be elaborated on a case-by-case basis by the courts. The report went on to note that "[o]bviously, a mark need not be absolutely identical to a genuine mark in order to be considered 'counterfeit'. Such an interpretation would allow counterfeiters to escape liability by modifying the registered trademarks of their honest competitors in trivial ways. However, the sponsors do not intend to treat as counterfeiting what would formerly have been *arguable, but not clear cut,* cases of trademark infringement." (Emphasis added).

On this point, the joint report favorably cited *Montres Rolex S.A. v. Snyder*, 718 F.2d 524, 530–32 (2d Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1594, 80 L.Ed.2d 126 (1984). The question there was whether a mark was counterfeit, thus allowing forfeiture of imported goods seized by Customs. The definition of "counterfeit" which was construed is the same statutory provision (15 U.S.C. § 1127) which was later incorporated by reference in 15 U.S.C. § 1116(d). The court in the *Rolex* case made the determination whether a mark was a substantially distinguishable counterfeit, as opposed to a mere infringement, from the standpoint of an average purchaser rather than from the standpoint of an expert. The court compared the imitations to the registered mark as it was actually used on products in the marketplace, rather than as it appears in the drawings printed in the certificate of registration. *See also* 3A Callmann, *Callmann Unfair Competition, Trademarks and Monopolies* § 21.-45, n. 4 (4th ed. 1983).

---

1. 130 Cong.Rec. H12078 (Daily Ed. Oct. 10, 1983) (Joint statement on trademark counter- feiting legislation).

In the present case, plaintiff Pepe (U.K.) has seven U.S. Trademark registrations for the trademark PEPE. The drawings in most of the registrations show PEPE in one or another fanciful script or typeface. Two of the registrations show PEPE in generic form with the addition of designations 2XL or II XL. None of the script forms or typeface shown in the registrations' drawings are exactly duplicated by that in which the mark PEPE appears on defendants' goods. Defendants' infringing goods do, however, bear exact reproductions of plaintiffs' PEPE as it appears on the genuine goods in the marketplace. Indeed, most exactly duplicate the entire pattern on the original Pepe T-shirts. Even the one Blantor defendants' T-shirt which does not duplicate the entire design of one of plaintiffs' T-shirts, incorporates borders of the trademark "PEPE" in a similar typeface to that appearing on one of plaintiffs' T-shirts. Clearly, this duplication of the genuine goods including the mark PEPE is more than an *arguable* case of infringement.

Using the "ocular test" of direct comparison of the defendants' goods with the genuine the Blantor defendants' use of the mark PEPE is use of a counterfeit mark. *See Fimab–Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Helio Import Export, Inc.,* 601 F.Supp. 1 (S.D.Fla. 1983).[2]

B. *Right of Seizure for violation of 15 U.S.C. § 1125 and the Puerto Rico law of Unfair Competition*

■ Even if Blantor defendants' duplication of plaintiffs' mark were not considered a counterfeit of a registered mark as the Blantor defendants contend, the plaintiffs would have a right to *ex parte* seizure of the goods bearing the mark PEPE and/or duplicating its trade dress under the federal and state law of unfair competition.

As noted in the joint statement of Congress on trademark counterfeiting legislation, *Infra,* n. 1 at page 758, 15 U.S.C.

§ 1116(d) "is directed solely at the seizure of goods in trademark counterfeiting cases.... Neither the House nor the Senate has studied the use of *ex parte* seizures in trademark infringement cases involving violations less egregious than counterfeiting [of a registered mark].... While the compromise bill therefore does not address *ex parte* seizures in other civil cases, such as trademark cases not involving counterfeits [of a registered mark], the sponsors believe that in any *ex parte* seizure, the court should bear in mind the policy concerns that lie behind the provisions of this bill and the need to provide procedural protection to persons against whom such seizures are ordered." From this and other statements in the legislative history of 15 U.S.C. § 1116(d), it is clear that Congress intended to expand rather than limit the right to *ex parte* seizure, and that its discussion of *ex parte* seizure in terms of counterfeits of registered marks was not meant to eliminate, or indeed even limit, the right to *ex parte* seizures for violations of 15 U.S.C. § 1125 or violation of state or local laws of unfair competition other than requesting the court to keep in mind the concern of Congress for procedural safeguards.

Prior to the enactment of 15 U.S.C. § 1116(d), *ex parte* seizure of duplicating, counterfeit goods was common. 1 J. Gilson, *Trademark Protection and Practice* § 5.10[3] n. 112[2] (1990). Such seizures were based upon Fed.R.Civ.P. 65, the All Writs Act, 28 U.S.C. § 1651, or under the injunctive provisions of 15 U.S.C. § 1116. Bainton, "Seizure Orders: An Innovative Judicial Response to the Realities of Trademark Counterfeiting", 73 T.M.R. 459 (1983); 1 J. Gilson, *Trademark Protection and Practice* § 5.10[3], n. 122 (1990).

Here the Blantor defendants have acted to duplicate plaintiffs' T-shirts and marks as actually used. The same factors enumerated above which support infringement of the federally-registered trademark PEPE support the count under section

---

**2.** This finding of use of a counterfeit mark extends to the registrations for PEPE whether they show Pepe in special form or show Pepe in a generic form with 2XL or II XL, since the purchasing public will simply perceive each of these as the mark PEPE.

43(a) for federal unfair competition or false designation of origin, both for the use of the PEPE trademark and the reproduction of plaintiffs' trade dress. *See Geoffrey, Inc. v. Toys 'R Us, Inc.,* 756 F.Supp. 661 (D.P.R.1991); *Davidoff Extension S.A. v. Davidoff Comercio E Industria Ltda.,* 747 F.Supp. 122 (D.P.R.1990); *Polo Fashions, Inc. v. Fernández,* 655 F.Supp. 664 (D.P.R.1987). Equally, defendants' activities in using the PEPE trademark and copying Pepe's trade dress violate Puerto Rico laws of unfair competition. *See Geoffrey, supra; Reno v. Tribunal Superior,* 102 D.P.R. 260 (1974); *Cooperativa de Cafeteros v. Colón Colón,* 91 P.R.R. 361 (1964).

Thus, both under this court's traditional rights to prevent copying of unregistered trademarks and trade dress under 15 U.S.C. § 1125, as discussed above, and in application of a federal remedy for violation of Puerto Rico laws of unfair competition, this court has the right to impound articles which bear the mark PEPE or copy Pepe's trade dress on *ex parte* application. *See Swatch Watch S.A. v. Aste Trading Corp.,* 1986 WL 734 (S.D.N.Y.1986). In the present case, the court has been mindful of the concern of Congress about safeguarding the rights of defendants and has included the same procedural safeguards in its order under the law of unfair competition, as required in a seizure under 15 U.S.C. § 1116.

■ In addition to the above, the *ex parte* seizure is an appropriate procedure under Puerto Rico law.[3] Rule 56 of the Rules of Civil Procedure of Puerto Rico, 32 L.P.R.A.App. III R. 56, sets forth the provisional remedies available here. Under Rule 56.1 the court is authorized to "issue any provisional order it may deem necessary to secure satisfaction of the judgment. The court may order the attachment, ..., or may order any other measure it deems necessary, according to the circumstance of the case." Rule 56.4 provides that the court may issue an order of attachment *ex*

*parte* provided there is an appropriate bond. *See HMG Property Investors, Inc. v. Parque Industrial Rio Canas, Inc.,* 847 F.2d 908 (1st Cir.1988).

The importance of such provisional remedies in counterfeit cases is undeniable. An important part of the final remedy in an unfair competition suit arising from the use of duplicative marks and trade dress is the destruction of the counterfeit goods. In such counterfeit cases, even when a court issues a temporary restraining order to prevent the continued sale of bogus goods, it is common for counterfeiters to simply ignore and violate the order by destroying or hiding the property in question and subsequently denying that it ever existed. Alternatively, upon learning that litigation is imminent, it is equally common for counterfeiters to transfer their inventory to another counterfeit seller whose identity is unknown to the trademark owner. *See In re Vuitton et Fils S.A.,* 606 F.2d 1 (2d Cir. 1979); 1 J. Gilson, *Trademark Protection and Practice* § 5.10(1) (1990). The Blantor defendants have offered no testimony or other evidence that they would do otherwise. Thus, the *ex parte* seizure in question is appropriate to secure the goods and means of production for their destruction, if so ordered, after a trial on the merits.

The procedural safeguards under local Rule 56 meet the concerns of Congress with regard to the rights of defendants. The bond of $20,000 that was posted is more than adequate to cover the value of the goods found and the means of production seized.

### C. *The Right of Ex Parte Seizure for Infringement of Copyright*

To establish a *prima facie* case of copyright infringement and thus show proper probable success in the merits of the claim, plaintiffs must show that (i) they own valid copyrights in the Pepe World Services design, the Pepe Co London design and the Pepe Special Design, and (ii) defendants violated one of the exclusive rights granted

---

**3.** In accordance with Fed.R.Civ.P. 64, the Puerto Rico Rules of Civil Procedure are applicable to the present circumstances.

plaintiffs in 17 U.S.C. § 106 by copying or distributing plaintiffs' copyrighted works without authorization. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir.1985); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977).

■ Prior to March 1, 1989, it was necessary to obtain a registration prior to filing an action for copyright infringement. However, as of that date the copyright law was amended to allow foreign copyright owners to sue under their copyrights in the United States without fulfilling formalities such as registration, provided the work in question was a Berne Convention work as defined in 17 U.S.C. § 101, as follows:

A work is a "Berne Convention work" if—

. . . . .

(2) the work was first published in a nation adhering to the Berne Convention, or was simultaneously first published in a nation adhering to the Berne Convention and in a foreign nation that does not adhere to the Berne Convention;

. . . . .

[F]or purposes of paragraph (2), a work is considered to have been simultaneously published in two or more nations if its dates of publication are within 30 days of one another.

. . . . .

The "country of origin" of a Berne Convention work, for purposes of section 411, is the United States if—

(1) in the case of a published work, the work is first published—

(A) in the United States;

(B) simultaneously in the United States and another nation or nations adhering to the Berne Convention, whose law grants a term of copyright protection that is the same as or longer than the term provided in the United States;

(C) simultaneously in the United States and a foreign nation that does not adhere to the Berne Convention; or

(D) in a foreign nation that does not adhere to the Berne Convention, and all of the authors of the work are nationals, or in the case of an audiovisual work legal entities with headquarters in, the United States;

. . . . .

Here, the copyright owner is a foreign corporation, Pepe (U.K.). The testimony of Pepe (U.K.)'s secretary, Richard Cooper, indicated that each of the works was developed and first published in the United Kingdom after March 1, 1989, and more than thirty days thereafter was first published in the United States. Although Mr. Cooper was not able from his own personal knowledge to indicate the exact dates of publication in the United States, his testimony was clear that Pepe (U.K.) was a British company; that designs were first developed in Britain and then some substantial time later (always far in excess of thirty days) published by the various subsidiaries outside the United Kingdom, including the United States. His testimony was based upon the business records of his company and his knowledge as to how the company operated. Mr. Cooper further testified as a British barrister with regard to British copyright law. He indicated that under British law, no formalities were required to perfect the copyright. There was not contradictory evidence offered. Such testimony is, at least, sufficient for the purposes of this hearing to establish that the works in question were non-U.S. Berne works. Thus, as noted in 17 U.S.C. § 411, plaintiffs have the right to bring the present action for copyright infringement without first complying with U.S. formalities.

■ The seizure itself has established that defendants have manufactured and distributed T-shirts bearing the Pepe designs in question without authorization. On the basis of these facts, there can be little doubt that plaintiffs shall likely prevail on the merits of their copyright infringement claim.

One of the rights granted under the Berne Convention is that of seizure. Thus plaintiff Pepe (U.K.) has the same right to seizure in the United States as any other

copyright owner. *See* Article 16, Berne Convention (Paris Text, July 24, 1971).

Since defendants have not argued nor have they introduced any evidence which indicates that plaintiffs have failed in any way to conform to the requirements of the Rules of Practice and Procedures for Copyright Cases promulgated by the United States Supreme Court, the *ex parte* seizure of those T-shirts and means of production which bore duplication of plaintiffs' designs in the Pepe World Service, Pepe Co London, and Pepe Special designs was proper.

## III. CONCLUSION

After hearing on the seizures, we confirm that the original order of seizure based on (a) the counterfeiting on all Blantor T-shirts of the registered trademark PEPE, pursuant to 15 U.S.C. § 1116(d); (b) unfair competition, through the printing and sale of T-shirts bearing the PEPE trademark and/or Pepe trade dress in violation of 15 U.S.C. § 1125 and Puerto Rico law pursuant to the inherent powers of this court; and (c) with regard to certain of the designs, for copyright infringement pursuant to 17 U.S.C. § 503 and Rules 3 through 13 of the United States Supreme Court Rules of Practice for Copyright Cases, was proper and the conditions which gave rise to the order are still in effect, and, accordingly, the seizure orders remain for the duration of the present litigation.

IT IS SO ORDERED.