# United States Court of Appeals
## For the First Circuit

No. 99-2008

UNITED STATES OF AMERICA,

Appellee,

v.

GERALD BALDYGA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Torruella, Chief Judge,

Wallace[*], Senior Circuit Judge,

and Lipez, Circuit Judge.

Benjamin S. Albert, with whom Jeffrey H. Cramer and Brown, Rudnick, Freed & Gesmer, P.C. were on brief, for appellant.
Jennifer H. Zacks, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

---

[*] Of the Ninth Circuit, sitting by designation.

December 7, 2000

**LIPEZ, Circuit Judge**. In March, 1999, a jury convicted Gerald Baldyga of four counts of possession of cocaine with intent to distribute and distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1), and one count of tampering with a witness, in violation of 18 U.S.C. § 1512(b)(3).  Focusing on the witness tampering conviction, Baldyga argues on appeal that the evidence was insufficient to support that conviction and that the district court erred in its instructions to the jury.  As the ensuing discussion reveals, Baldyga's case does not involve witness tampering in the classic sense of a defendant, prior to trial, approaching a potential witness and attempting, through threats or other means, to prevent that witness from testifying against him.  Baldyga also raises issues we have not addressed before relating to the "communication with federal officials" element of the witness tampering statute.  Despite the unusual facts and unaddressed issues, federal circuit courts have consistently interpreted § 1512(b)(3) to include the kind of conduct Baldyga engaged in here.

Baldyga further contends unpersuasively that one of the search warrants authorizing a search of his property was defective, and that the district court made an improper evidentiary ruling at trial. Accordingly, we affirm his conviction on all counts.

## I. Background

We recount briefly the contours of this case, deferring a more detailed recitation for the sufficiency of the evidence discussion. Baldyga's convictions arise from an investigation begun by state and local authorities in Webster, Massachusetts, in January, 1998. The federal Drug Enforcement Administration (DEA) joined the investigation in February, 1998. Richard Chenevert, a regular drug customer of Baldyga's, was a cooperating witness throughout the investigation who agreed to buy cocaine from Baldyga in a "controlled purchase." For each transaction, the government gave Chenevert money for the purchase and equipped him with a listening device so they could monitor his safety. During January and February, 1998, Chenevert successfully made three controlled purchases of cocaine from Baldyga.

On March 1, 1998, Chenevert attempted to make a fourth controlled purchase of cocaine at Baldyga's home. When he arrived, however, Baldyga gave him a note instructing him to

remain silent and to put his hands on the wall. Baldyga found the listening device Chenevert was wearing, disabled it, and instructed him to leave the premises. When the listening device went dead, the law enforcement officers monitoring the transaction approached the property. Although Baldyga fled the house through a rear exit, he was apprehended by authorities approximately 50 yards from his home.

## II. Sufficiency of the Evidence

Baldyga contends that the district court erred in not granting his motion for acquittal because there was insufficient evidence to support his conviction for witness tampering in connection with his confrontation with Chenevert. We review the district's court ruling on the Rule 29 motion de novo. See United States v. Hernandez, 146 F.3d 30, 32 (1st Cir. 1998). In considering whether the evidence was sufficient to convict Baldyga, we view the facts and draw reasonable inferences in favor of the government. See United States v. Freeman, 208 F. 3d 332, 337 (1st Cir. 2000). The evidence is legally sufficient so long as, taken as a whole, it warrants a judgment of conviction. See id. at 338. We consider both direct and circumstantial evidence as part of this inquiry. See United States v. Duclos, 214 F.3d 27, 32 (1st Cir. 2000). To affirm Baldyga's conviction for witness tampering under 18 U.S.C. §

1512(b)(3), we must find that the evidence was sufficient for the jury to conclude beyond a reasonable doubt that Baldyga knowingly intimidated or threatened Chenevert with the intent to hinder Chenevert's communication with federal law enforcement officials.[1]

The government's cooperating witness, Richard Chenevert, testified that on March 1, 1998, he agreed with local and federal law enforcement authorities to do a fourth controlled buy of cocaine from Baldyga. Following the typical procedure, the government searched Chenevert, removed his personal effects from his pockets, provided him with cash for the transaction, and equipped him with a listening device. Although Chenevert had successfully obtained cocaine from Baldyga during controlled buys on three previous occasions, the transaction on March 1 did not go well. When he arrived at

---

[1] The witness tampering statute, 18 U.S.C. § 1512(b)(3), provides, in relevant part:

Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings . . . shall be fined under this title or imprisoned not more than ten years, or both.

Baldyga's residence, Baldyga handed Chenevert the note instructing him not to talk, and to put his hands on the wall. When he finished reading the note and looked up, Baldyga was pointing a gold-colored double-barreled gun at his face.

When Chenevert turned around to face the wall, Baldyga told him he had heard he would be wearing a wire. Baldyga then searched him for the listening device and disabled it after finding it in Chenevert's coat pocket. Baldyga asked Chenevert what was happening, and Chenevert told him the police had not followed him to Baldyga's house. At that point, Baldyga told Chenevert to leave the premises and never return. Chenevert's testimony about this exchange was substantiated at trial by Stephen Rock, another government witness, who was at Baldyga's home that evening to purchase cocaine.

A.        **Hindering Communication**

Baldyga argues first that he "never threatened [Chenevert] with physical harm should [Chenevert] inform federal authorities in the future." Indeed, Chenevert did not testify that Baldyga explicitly threatened to harm him should he contact federal authorities. Nevertheless, the jury in this case could readily and reasonably infer that Baldyga's brandishing of the gun, and holding it to Chenevert's head, reflected an intent to deter Chenevert from discussing the cocaine deals with federal

-6-

authorities.  Additionally, the jury could have concluded that Baldyga revealed an awareness of Chenevert's cooperation with law enforcement authorities by telling him he heard he would be wearing a wire, and by searching for the listening device.  The jury also could have concluded that Baldyga intended to prevent or discourage such cooperation when he ripped the wire away from the transmitter.[2]  See, e.g., United States v. Black, 78 F.3d 1, 6-7 (1st Cir. 1996) (finding evidence sufficient under § 1512(b)(3) where the defendant, accompanied by a co-defendant who commented on the witness's cooperation with law enforcement, said nothing to the witness about her cooperation with federal officials but displayed a leather holster on his ankle); United States v. Victor, 973 F.2d 975, 978 (1st Cir. 1992) (finding "abundant proof from which the jury could have determined that [the defendant] was aware of [the witness's] cooperation with the federal authorities" where the defendant made an "unannounced visit" and "intrusive search" of the witness's apartment and stated only that the witness "talked too much in federal court").

---

[2] We note that Baldyga conceded at oral argument that, assuming the officers listening to the conversation between him and Chenevert were federal agents for purposes of § 1512(b)(3), his actions to delay Chenevert's communication with those officials would suffice under this element of the statute.

-7-

**B.**      **Status of the Officers**

Baldyga also contends that he did not violate the witness tampering statute because no federal authorities were listening to his conversation with Chenevert when he disconnected the wire. Because the officers monitoring Chenevert were local police only, Baldyga argues, he did not interrupt Chenevert's communication with any federal official. This argument fails for two reasons.[3]

First, the definition of "federal officials" under § 1512 includes not only federal law enforcement officials acting in their federal capacity, but also any officer or employee acting for or on behalf of the federal government as an adviser

---

[3] We must also clarify two points here. First, our consideration of whether the evidence was sufficient under § 1512(b)(3) to find the requisite involvement of federal officials assumes that the jury was correctly instructed to find specifically that the communication Baldyga hindered would have been made to a federal agent. As Baldyga correctly contends on appeal, the trial court did not so instruct the jury, and this was error. Second, our finding that there was sufficient evidence on the federal status of the officers does not preclude Baldyga's claim that the omitted element of the jury instructions was plain error that should be corrected. Rather, as we discuss infra Part III, our consideration of the sufficiency claim and the plain error claim raise analytically distinct questions. Furthermore, the outcomes at stake are different. If Baldyga prevailed on his challenge to the sufficiency of the evidence, we would dismiss the witness tampering charge. See Fed. R. Crim. P. 29(a). Success on his assignment of error in the jury instructions would only secure him a new trial on that charge. See, e.g., United States v. Falu-Gonzalez, 205 F.3d 436, 444 (1st Cir. 2000).

or consultant.  See 18 U.S.C. § 1515(a)(4).[4]  Because the local police officers monitoring the transaction between Chenevert and Baldyga were acting with the DEA as part of a joint investigation, they may be considered federal officials for the purposes of § 1512(b)(3).  See United States v. Veal, 153 F.3d 1233, 1251 n.25 (11th Cir. 1998) (stating that "[b]ecause of the concurrent jurisdiction of state and federal authorities in such areas as drug interdiction . . . we recognize that state police officers can serve as advisors or consultants to federal agents in the 'prevention, detection, investigation, or prosecution' of various federal crimes" (quoting 18 U.S.C. § 1515(a)(4)(A))).

Baldyga argues that the requirements of § 1512(b)(3) are "noticeably absent in the instant matter" because "there were no federal authorities listening to the communication device worn by [Chenevert]."  We reject this claim because § 1512 does not require that the witness's communication with federal officers be as imminent as Baldyga suggests.  Instead, other circuits have read the statute to require only a

---

[4] Specifically, § 1515(a), which defines the terms used in § 1512, provides, in pertinent part: "the term 'law enforcement officer' means an officer or employee of the Federal Government, or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant . . . authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense."  18 U.S.C. § 1515(a)(4)(A).

possibility that the conduct will interfere with communication to a federal agent.[5] For example, in Veal, where the appellant was accused of transmitting misleading information to federal officials, the court found sufficient a "possibility or likelihood that [the defendants'] false and misleading information would be transferred to federal authorities irrespective of the governmental authority represented by the initial investigators." Id. at 1251-52; see also United States v. Applewhaite, 195 F.3d 679, 687 (3d Cir. 1999); United States v. Emery, 186 F.3d 921, 925 (8th Cir. 1999); United States v. Diaz, 176 F.3d 52, 91-92 (2d Cir. 1999); United States v. Bell, 113 F.3d 1345, 1349 (3d Cir. 1997); United States v. Stansfield, 101 F.3d 909, 919 (3d Cir. 1996); United States v. Romero, 54 F.3d 56, 62 (2d Cir. 1995); United States v. Fortenberry, 971 F.2d 717, 720 n.9 (11th Cir. 1992). In discouraging Chenevert's communication with authorities by disconnecting the listening

---

[5] We note that some of these cases interpreting § 1512(b)(3) concern misleading conduct rather than the intimidating conduct we have here. In Veal, for example, the defendants were convicted of misleading a witness with the intent to hinder the witness's communication with federal officials. See Veal, 153 F.3d at 1245. The analysis regarding the federal character of the crime and the relevant authorities applies with equal force to any consideration of a conviction under § 1512. See, e.g., United States v. Diaz, 176 F.3d 52, 91 (2d Cir. 1999) (relying on an opinion analyzing § 1512(a)(1)(C) in considering claims under § 1512(b)(3) because the elements of the subsections of § 1512 are similar).

device, Baldyga satisfied the requirements of the statute because the possibility existed that such communication would eventually occur with federal officials. Indeed, not only was it possible that Chenevert would communicate with federal agents, but his prior cooperation with them made such communication probable.

We also want to dispel any notion that the defendant's intent to hinder communication must include an awareness of the possible involvement of federal officials. Section 1512 explicitly does not require proof of the defendant's state of mind with respect to whether the officials involved were federal officers. See 18 U.S.C. § 1512(f).[6] Therefore, the evidence may be sufficient to support a conviction under § 1512(b)(3) even if the defendant had no knowledge that the witness threatened had even contemplated communicating with a federal official. "All that § 1512(b)(3) requires is that the government establish that the defendants had the intent to influence an investigation that happened to be federal." Applewhaite, 195 F.3d at 687.

**C.      Commission of a Federal Offense**

---

[6] Section 1512(f) provides, in relevant part: "In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government or a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an adviser or consultant."

Finally, Baldyga argues that the evidence is not sufficient to support his conviction for witness tampering because Chenevert could not have witnessed a federal offense on March 1, 1998. Because he claims he had no intention of selling Chenevert drugs that day, he contends that there is no federal offense upon which to predicate his conviction under § 1512(b)(3). We reject this argument. The jury found that the evidence supported a guilty verdict on the charge of possessing cocaine with intent to distribute it in violation of 21 U.S.C. § 841(a)(1), a federal offense. Moreover, the evidence was sufficient to support Baldyga's conviction for witness tampering even if the prosecution had been unable to prove all the elements of the drug charge. See Applewhaite, 195 F.3d at 687 (noting that "if the investigation or prosecution a defendant tries to hamper turns out to be federal, the [defendant] is guilty of tampering with a federal witness even if the prosecution is unable to establish the facts necessary to establish a violation of federal law").

Section 1512(b)(3) does not require that the defendant be convicted of the federal offense. Rather, the statute criminalizes the interference of "communication to a law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." 18

-12-

U.S.C. § 1512(b)(3) (emphasis added). Contrary to Baldyga's assertion, the dispositive issue is the federal character of the investigation, not guilty verdicts on any federal offenses that may be charged. Indeed, even where a prosecution is in federal court "only by accident or mistake" because authorities are not correct in selecting a federal forum over a state forum, this fact "does not alter the federal nature of the prosecutions brought in federal court insofar as a violation of 18 U.S.C. § 1512 is concerned." Applewhaite, 195 F.3d at 688. Accordingly, we reject Baldyga's claim that there was no federal offense involved on March 1, 1998.

### III. Jury Instructions

Baldyga argues that the court erred in not instructing the jury that they must find the law enforcement officials involved to be federal agents, as opposed to state or local police.[7] Because Baldyga's trial counsel did not object to the

---

[7] With respect to § 1512(b)(3), the judge instructed the jury:

> Now Count 8 accuses Gerard [sic] Baldyga of tampering with a witness or informant on or about March 1, 1998. For you to find the defendant guilty of this crime, you must find that the government has proven each of the following elements beyond a reasonable doubt: first, that Mr. Baldyga used intimidation, physical force, or threats on March 1, 1998; and second, that he did so with the intent to influence, delay, or prevent the testimony of that person in an official proceeding or to prevent the communication to a law

-13-

instructions, we review this claim for plain error. <u>See</u> Fed. R.

Crim. P. 52(b); <u>see</u> <u>also</u> <u>United States</u> v. <u>Olano</u>, 507 U.S. 725,

731 (1993); <u>United States</u> v. <u>Colon-Munoz</u>, 192 F.3d 210, 221 (1st

Cir. 1999). To justify relief for this error, we must conclude

that there was error, that the error was plain, and that it

affected the substantial rights of the defendant. <u>See</u> <u>Colon-</u>

<u>Munoz</u>, 192 F.3d at 221. Even if these three conditions are

satisfied, correcting the error remains discretionary, and we

will do so only if the mistake "'seriously affect[s] the

fairness, integrity, or public reputation of judicial

proceedings.'" <u>Olano</u>, 507 U.S. at 732 (quoting <u>United States</u> v.

<u>Young</u>, 470 U.S. 1, 15 (1985)). Error is "plain" if it is

"clear" or "obvious." <u>Id.</u> at 734. The error in this case is

"plain" because § 1512(b)(3) requires, as an element of the

offense, that the law enforcement officials be federal agents.

However, we conclude that this omitted element was not

prejudicial because it did not affect Baldyga's substantial

rights.

---

enforcement officer of information relating to the
commission or possible commission of a federal
offense.

The government does not need to prove that Mr. Baldyga
knew that there was a pending federal, as opposed to
state, proceeding at the time of the offense.

For a mistake to affect the substantial rights of the defendant under the third prong of the "plain error" test, the error must have been "prejudicial" in the sense that it must have affected the outcome of the district court proceedings. See id. Because he did not object to the jury instructions at trial, Baldyga bears the burden of persuasion on this point. See id. Our task is to determine "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." Neder v. United States, 527 U.S. 1, 19 (1999).[8]

At trial, Baldyga did not dispute the DEA's involvement in the investigation. Even on appeal he contests only the extent to which federal agents were involved in the investigation, and their proximity to the transaction between him and Chenevert on March 1, rather than their involvement at all. Furthermore, the jury found, beyond a reasonable doubt,

_____

[8] Although this inquiry resembles our analysis of Baldyga's challenge to the sufficiency of the evidence, we note that finding the evidence sufficient to support his conviction did not rule out the possibility that he was prejudiced by the omitted element of the jury instructions. In deciding that the evidence was sufficient to support his conviction, we determined only that the evidence warranted a judgment of conviction beyond a reasonable doubt. It would be consistent with that conclusion to also conclude as part of the plain error analysis that the same evidence was not so overwhelming as to rationally preclude "a contrary finding with respect to the omitted element." Neder, 527 U.S. at 19. However, we do not reach such a conclusion here.

that Baldyga engaged in conduct that constitutes a federal offense by possessing cocaine with intent to sell. Logically, the jury likely would have concluded that at least some of the law enforcement officers involved in investigating that matter were federal agents. See, e.g., Bell, 113 F.3d at 1349 (noting, "[i]f an offense constitutes a federal crime, it is more likely that an officer investigating it would be a federal officer"). Indeed, Special Agent Michael Boyle of the federal Drug Enforcement Administration testified that he accompanied Chenevert to Baldyga's residence on February 10, 1998 in an attempt to make a controlled purchase of cocaine. Accordingly, the jury heard evidence that at least one federal officer was an active part of the investigation of Baldyga's conduct.

Based on this evidence, and other evidence presented at trial, we cannot conclude that the jury rationally could have made a contrary finding with respect to the element omitted from the jury instructions. According to Neder, 527 U.S. at 19, Baldyga was obligated to raise sufficient evidence to the contrary. He neglected to do so at all in his initial brief, and argues in his reply brief only that the involvement of the federal DEA was limited, rather than that such involvement was lacking. Therefore, no prejudice exists, and we decline to correct the error. See id. at 18.

-16-

## IV. Search Warrants

Baldyga appeals the district court's denial of his motion to suppress evidence seized from the second search of his residence. Following Baldyga's arrest on March 1, 1998, the police obtained and executed a warrant to search the primary residence at Baldyga's property, 61 Sutton Road, on March 2. After seizing several items, including weapons and the note that Baldyga had written to Chenevert, the police obtained and executed a second warrant to search Baldyga's property. Baldyga argues that the fruits of the second search should be suppressed because the police lacked probable cause to obtain the warrant, and because the warrant contained an insufficient description of the premises to be searched.

We review a district court's decision to grant or deny a suppression motion de novo. See United States v. Ferreras, 192 F.3d 5, 9 (1st Cir. 1999). However, the factual findings of the court are entitled to deference in the absence of proof that they are clearly erroneous. See id. We will find that clear error exists only if, "after considering all the evidence, we are left with a definite and firm conviction that a mistake has been made." Id. at 9-10. "Moreover, we will uphold a district court's decision to deny a suppression motion provided that any

reasonable view of the evidence supports such a decision."  Id. at 10.

Our review of the evidence persuades us that there was probable cause to support the second search warrant.  Probable cause exists where information in the affidavit reveals "a fair probability that contraband or evidence of a crime will be found in a particular place."  United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir. 1997) (internal quotation and citation omitted).  "Probability is the touchstone" of this inquiry.  Id. (internal quotation and citation omitted).  In his affidavit in support of the application for the warrant, police officer Thomas Ralph stated that the fruits of the first search,[9] as well as the ongoing police investigation of Baldyga's activities, indicated that "a dealer at Mr. Baldyga's level would have a large amount of cocaine on hand for sales."  The first search of Baldyga's residence only, and not the other buildings on the property, did not produce any cocaine. Therefore, a reasonable probability existed, based on the knowledge of the local police,

---

[9] Although the police did not find any cocaine during the first search, they did find four objects with possible cocaine residue (a CD, a spoon, 2 plastic bag corners, and half of a scale).  Additionally, the search yielded four guns, shells, an open box of baking soda, one bottle of Pyrodex (described as "black Powder" in the police report), and a "note with threatening statement on it" later identified as the note Baldyga gave Chenevert.

-18-

and the professional experience of the affiant, that cocaine might be found in other locations on Baldyga's property.

Baldyga also contends that the second search warrant was defective because it explicitly authorized only a search of the residence at 61 Sutton Road, and not of the outbuildings and other structures on the property. The authority to search is limited by the specific places described in the warrant and cannot be extended to additional locations. See Ferreras, 192 F.3d at 10. "However, search warrants and affidavits should be considered in a common sense manner, and hypertechnical readings should be avoided." United States v. Bonner, 808 F.2d 864, 868 (1st Cir. 1986). The second search warrant in this case authorized a search of "61 Sutton Road, Webster, a single family residence" and did not mention any of the other buildings on Baldyga's property. However, the warrant stated, in the section describing the items to be seized, "Also, any vehicles on the property and any unattached buildings, storage areas, garages, sheds on the property of 61 Sutton Road, Webster, Massachusetts." The district court ruled, based on a reasonable reading of the warrant and the affidavit of police officer Ralph, that the entry describing the items to be seized was misplaced and had been intended to describe the premises to be searched. We must accept this finding unless we find that it is

clearly erroneous.  See Ferreras, 192 F.3d at 9.  Based on police officer Ralph's affidavit--which specifically mentions "the separate storage areas, houses, garages, unattached buildings and vehicles on the premises at 61 Sutton Road"--we cannot conclude that the district court's decision is clearly erroneous, and we affirm the ruling that the second search warrant adequately described the premises to be searched.[10]

## V. Evidentiary Rulings

Finally, Baldyga claims that the district court made two improper evidentiary rulings.  First, he argues that the court erred in admitting an automatic weapon seized from his property ("the Uzi") into evidence.  He also contends that the district court should not have allowed a government witness, Special Agent Offringa, to testify about reconstructing the weapon to make it capable of firing.  Although Baldyga does not refer to Federal Rule of Evidence 403 specifically, the substance of his argument is that the weapon itself, and Offringa's testimony, should have been excluded pursuant to Rule 403 because the probative value of the evidence was

---

[10] Because we find that probable cause existed to support the second search warrant, and that the warrant adequately described the premises to be searched, we do not reach the issue of whether the search would be valid under the good faith exception to the warrant requirement.  See United States v. Leon, 468 U.S. 897 (1984).

-20-

substantially outweighed by the danger of undue prejudice to his case.  See Fed. R. Evid. 403.  We review the district court's decision to allow the evidence for abuse of discretion.[11]  See United States v. Alston, 112 F.3d 32, 35 (1st Cir. 1997); United States v. Cruz-Kuilan, 75 F.3d 59, 61 (1st Cir. 1996).  These rulings must stand absent a showing of "extraordinarily compelling circumstances."  United States v. Lombard, 72 F.3d 170, 190 (1st Cir. 1995) (quoting United States v. Lewis, 40 F.3d 1325, 1339 (1st Cir. 1994)).  Baldyga has made no such showing.

The pieces of the Uzi were relevant to prove that Baldyga was a felon in possession of firearms, and Offringa's testimony was relevant to a full understanding of the number and nature of the weapons he owned.  Any prejudice to Baldyga was mitigated by Offringa's testimony that the Uzi had been found at Baldyga's residence in parts, that it had to be reassembled to make it operable, and that a barrel--a component necessary to

---

[11] Baldyga's trial counsel objected only to Offringa's testimony concerning the reconstruction of the Uzi, and not to the admission of the weapon itself.  Therefore, the court's decision to admit the Uzi into evidence is reviewed for plain error only.  See Fed. R. Crim. Pro. 52(b); Olano, 507 U.S. at 731.  We do not reach the issue of whether Baldyga could demonstrate plain error because we conclude that the admission of the Uzi was not erroneous.  However, we note that Baldyga has not even attempted to demonstrate, as he must under the plain error doctrine, see Olano, 507 U.S. at 734, that the admission of the Uzi changed the outcome of his trial.

make the weapon capable of being fired--had not been found among the pieces in Baldyga's home.  We reject Baldyga's challenge and hold that the district court did not abuse its discretion in making the evidentiary rulings.

**Affirmed.**