PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
             *Plaintiff-Appellee,*

v.

AMMAD BASHAUN PERRY, a/k/a
Benjamin Franklin Moffit,
             *Defendant-Appellant.*

No. 02-4669

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CR-01-312-DKC)

Argued: May 9, 2003

Decided: July 11, 2003

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Judge Traxler and Judge Gregory joined.

## COUNSEL

**ARGUED:** Elisa Ann Long, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Stuart A. Berman, Assistant United States Attorney, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Denise C. Barrett, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant. Thomas M. DiBiagio, United States Attorney, Stephanie

A. Gallagher, Assistant United States Attorney, Greenbelt, Maryland, for Appellee.

**OPINION**

KING, Circuit Judge:

Ammad Bashaun Perry was convicted of one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(3). On appeal, Perry contends that there was insufficient evidence to support the verdict. He also asserts that the district court erred both in denying his pretrial motion to dismiss the charge because of prosecutorial vindictiveness and in denying his motion for a new trial. For the reasons explained below, we affirm.

I.

A.

At about 12:30 a.m. on March 15, 2001, the police in Montgomery County, Maryland, observed a blue Hyundai Elantra traveling at a high rate of speed. Two officers from the Montgomery County Police Department (the "MCPD"), John Cameron and Joseph Saunders, stopped the vehicle and requested that the driver produce his license and registration. The driver (subsequently identified as the defendant, Perry) was unable to produce a license, but he did provide the officers with the vehicle's registration, in the name of Barbara Hawkins (subsequently revealed to be Perry's mother). In response to Cameron's questions, Perry stated that his name was Benjamin Franklin Moffitt and that his date of birth was June 28, 1967.

Perry provided the officers vague answers to inquiries regarding his place of residence. Their suspicions aroused, the officers asked Perry to step out of the car. Perry complied and consented to a search of the vehicle. By this time, Officer John Mullaney, also of the MCPD, had arrived on the scene to provide back-up support to Cameron and Saunders. Cameron remained with Perry, while Mullaney and Saunders searched the vehicle, finding a seven-inch knife in the

glove compartment and a set of brass knuckles in the center console. They then searched the vehicle's trunk, where they located a metal pipe (wrapped at one end in electrical tape "to make a handle"), a wooden "shank" (a handmade sharp instrument), and a laundry dryer sheet box containing a loaded .380 caliber handgun and extra ammunition. The firearm's serial number had been obliterated.

Perry was placed under arrest and informed that he was being charged with various weapons violations. Cameron and Saunders then transported Perry to the Rockville District Police Station. During the ride to the police station, Perry repeatedly requested that the officers "get rid of the gun." He informed them that he would "give [them] anybody's name [they] want[ed] to know" if they would "throw away the gun."

Later that evening, Officers Cameron and Saunders transferred Perry from the police station to the nearby Central Processing Unit, where he was booked by Corporal Douglas Carranza. When Carranza asked Perry for his name and date of birth, Perry again asserted that his name was Benjamin Franklin Moffitt and that his date of birth was June 28, 1967. He was then fingerprinted, and a database identification system revealed Perry's true identity, that his date of birth was actually June 10, 1971, and that he had a prior felony conviction. In early June of 2001, once the MCPD became aware of his true identity and his prior felony conviction, it referred Perry's case to the United States Attorney and the Bureau of Alcohol, Tobacco, and Firearms (the "ATF") for possible federal prosecution.[1]

B.

On June 6, 2001, a grand jury in the District of Maryland returned a two-count indictment against Perry. The indictment charged Perry with being a felon in possession of a firearm, in violation of 18 U.S.C.

---

[1]Under the evidence, the standard practice of the MCPD is to check the criminal history of all persons arrested for firearms offenses, utilizing name and date of birth, in order to identify any that are felons. Once such an individual is identified, an Assistant State's Attorney decides whether that person's case should be referred to the United States Attorney and the ATF.

§ 922(g)(1),[2] and with knowingly possessing a firearm bearing an obliterated serial number, in violation of 18 U.S.C. § 922(k).[3] A jury trial was conducted from April 9 to April 12, 2002. On April 12, after nearly two days of deliberations, the court granted Perry's unopposed motion for a mistrial, on the ground that the jury was deadlocked.

Soon thereafter, on May 1, 2002, a second grand jury returned a three-count superseding indictment against Perry. In addition to the charges made in the initial indictment, the grand jury alleged that Perry had engaged in federal witness tampering, in violation of 18 U.S.C. § 1512(b)(3), when he provided a false name and false date of birth to the MCPD.[4] The defense moved to dismiss the witness tampering count, contending that the indictment failed to allege an offense under § 1512(b)(3), and asserting that the circumstances leading to the additional charge gave rise to a presumption of prosecutorial vindictiveness. The court denied the motion on May 13, 2002, and Perry's second trial began the next day. Following the Government's presentation of its case-in-chief, Perry moved for judgment of acquittal on all counts. The court denied the motion as to the firearms

---

[2]Section 922(g)(1) of Title 18 provides in pertinent part:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year [to] possess in or affecting commerce, any firearm or ammunition . . . .

18 U.S.C. § 922(g)(1).

[3]Section 922(k) of Title 18 is violated when a "person knowingly . . . transport[s] . . . in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered." 18 U.S.C. § 922(k).

[4]Section 1512(b)(3) of Title 18 provides in relevant part:

> Whoever knowingly . . . engages in misleading conduct toward another person, with intent to . . . hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 1512(b)(3).

charges, but reserved ruling on the witness tampering charge.[5] Perry renewed his motion for judgment of acquittal on all counts at the close of the evidence. Again, the court denied the motion as to the firearms charges, but reserved ruling on the witness tampering charge. On May 16, 2002, the jury acquitted Perry on the two firearms offenses, but it convicted him of witness tampering.

On June 19, 2002, Perry again moved for judgment of acquittal, or in the alternative, for a new trial. The court denied both motions. Perry was subsequently sentenced to twenty-one months' imprisonment, to be followed by three years of supervised release. Perry has appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

In reviewing the sufficiency of evidence in a criminal case, a guilty verdict must be upheld if there is substantial evidence, taking the view most favorable to the prosecution, to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942); *see also United States v. Bennafield*, 287 F.3d 320, 324 (4th Cir. 2002). In conducting such an inquiry, we may not "weigh the evidence or review the credibility of the witnesses." *United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997). And, where the evidence supports differing reasonable interpretations, "the jury decides which interpretation to believe." *Id.* (internal quotation marks omitted).

We review for abuse of discretion a district court's denial of a motion for a new trial. *United States v. Arrington*, 757 F.2d 1484, 1486 (4th Cir. 1985). We have observed that a court "should exercise its discretion to grant a new trial 'sparingly,'" and that it should do so "'only when the evidence weighs heavily against the verdict.'" *Wilson*, 118 F.3d at 237 (quoting *Arrington*, 757 F.2d at 1486).

Finally, we review for abuse of discretion a court's determination of whether, in the circumstances of a particular case, a presumption

---

[5]The court ruled that only the § 922(g)(1) offense (felon in possession of a firearm), and not the § 922(k) offense (possession of a firearm with an obliterated serial number), could serve as a predicate offense for the witness tampering charge.

of prosecutorial vindictiveness is warranted. *United States v. Najjar*, 300 F.3d 466, 480 (4th Cir. 2002). In our review of such a determination, we are mindful that the presumption arises "'only in cases in which a reasonable likelihood of vindictiveness exists.'" *Id.* at 480-81 (quoting *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).

## III.

Perry raises three challenges to his federal witness tampering conviction. First, he contends that there was insufficient evidence on which to convict him of violating § 1512(b)(3). Next, Perry maintains that the court abused its discretion in denying his motion for a new trial. Finally, he asserts that the court erred in failing to dismiss the witness tampering charge as motivated by prosecutorial vindictiveness. We address each contention in turn.

## A.

Perry first maintains that the evidence was insufficient to support his conviction of witness tampering.[6] In particular, he asserts that the prosecution's evidence failed to establish that, in providing the MCPD with a false name and a false date of birth, he intended to prevent the communication of information to federal law enforcement officers relating to the possible commission of a federal offense.

In order to secure a guilty verdict under § 1512(b)(3), the Government is obliged to demonstrate that a defendant knowingly (1) "engage[d] in misleading conduct toward another person," (2) with the intent to "hinder, delay, or prevent the communication to a [federal] law enforcement officer . . . of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(b)(3). Perry contends that, while the evidence may have shown that he

---

[6]The Government contends that Perry's challenge to the sufficiency of the evidence is actually a "poorly-disguised attack[ ] on the unobjected-to jury instructions," which we should review for plain error. Perry, however, has framed his challenge as one to the sufficiency of the evidence, and we therefore review it as such, "assum[ing] that the jury was correctly instructed." *United States v. Baldyga*, 233 F.3d 674, 679 n.3 (1st Cir. 2000).

engaged in misleading conduct, it failed to demonstrate that he did so with an intent to hinder, delay, or prevent any communication with a federal law enforcement officer regarding a possible federal offense.

Jurisdiction for a federal prosecution under § 1512(b)(3) "is based on the federal interest of protecting the integrity of potential federal investigations by ensuring that transfers of information to federal law enforcement . . . relating to the possible commission of federal offenses be truthful and unimpeded." *United States v. Veal*, 153 F.3d 1233, 1250 (11th Cir. 1998); *see also United States v. Applewhaite*, 195 F.3d 679, 688 (3d Cir. 1999) ("It is the integrity of the process, and the safety of those involved in it that Congress was seeking to protect in enacting § 1512."). Although a defendant must have engaged in misleading conduct with the intent to "hinder, delay, or prevent" communication with a federal law enforcement officer, the statute makes clear that "no state of mind need be proved with respect to the circumstance . . . that the law enforcement officer is an officer or employee of the Federal Government." 18 U.S.C. § 1512(g)(2). As the Third Circuit has observed, the statute instead requires only "that the government establish that the defendants had the intent to influence an investigation that happened to be federal." *Applewhaite*, 195 F.3d at 687; *see also United States v. Baldyga*, 233 F.3d 674, 681 (1st Cir. 2000) (same); *United States v. Causey*, 185 F.3d 407, 422 (5th Cir. 1999) (concluding that statute requires "proof that officers with whom the defendant believed the victim might communicate *would in fact be federal officers*" (emphasis in original) (internal quotation marks omitted)).[7]

---

[7]The Eleventh Circuit appears to have gone a step further, observing that § 1512(b)(3) only requires proof that a defendant intended to influence an investigation and there was a "possibility or likelihood that . . . false and misleading information would be transferred to federal authorities irrespective of the governmental authority represented by the initial investigators." *Veal*, 153 F.3d at 1251-52. In *Veal*, the court concluded that, even if a defendant's intent was to influence a state investigation, the federal statute was satisfied so long as there existed a possibility that the misleading information would be transferred to federal law enforcement officers. We need not decide whether to adopt this interpretation of § 1512(b)(3), because there was sufficient evidence here to show that Perry intended, in misleading the MCPD, to "influence an investigation that happened to be federal." *Applewhaite*, 195 F.3d at 687.

The Government presented ample evidence from which a jury could conclude that Perry's intent was to hinder, delay, or prevent communications related to "an investigation that happened to be federal," specifically, the federal investigation into Perry's status as a felon in possession of a firearm. The jury heard testimony that Perry pleaded with Officers Cameron and Saunders to "get rid of the gun." It also heard that Perry provided false information to Corporal Carranza during the booking process. The jury was entitled to conclude that Perry provided such false information with an intent to prevent the MCPD from communicating his true identity to those who might investigate the firearms offenses. Moreover, under the evidence, once Perry's true identity was discovered, his file was referred to the United States Attorney and the ATF for possible federal prosecution.[8] Whether Perry was aware that a portion of the firearms investigation would be federal is irrelevant: the prosecution need only show (1) that Perry provided false information with the intent to influence the firearms investigation, and (2) that the firearms investigation happened to be federal. *See Applewhaite*, 195 F.3d at 687; *Baldyga*, 233 F.3d at 681. Accordingly, the evidence was sufficient for the jury to find that Perry had violated § 1512(b)(3).[9]

---

[8]As discussed above, the legislative purpose behind § 1512(b)(3) is to ensure that communications with federal law enforcement relating to the possible commission of federal crimes "be truthful and unimpeded." *Veal*, 153 F.3d at 1250. As the evidence demonstrated, the MCPD regularly communicated with federal authorities regarding felons who were arrested for firearms offenses. Accordingly, the jury was entitled to conclude that, had Perry's true name and date of birth gone undetected, he would have successfully hindered the MCPD's communication with federal officials regarding possible federal crimes — conduct the statute is designed to prevent.

[9]Perry also contends that the Government, in order to obtain a conviction under § 1512(b)(3), was required to show that the MCPD was, at the time of the arrest, cooperating in an ongoing federal investigation or in the investigation of a federal offense. This contention is without merit. Nothing in § 1512(b)(3) suggests that the recipient of the deceptive information must be involved in an ongoing federal investigation, or in an investigation of a federal crime. Indeed, as the First Circuit observed in rejecting a similar contention, the statute "does not require that the witness's communication with federal officers be . . . imminent." *Baldyga*, 233 F.3d at 680.

B.

Perry next maintains that the district court abused its discretion when it denied him a new trial on the basis of an inconsistent verdict. Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, a court may, on a motion by the defendant, grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. In this situation, the court was well within its discretion in deciding that the interest of justice did *not* so require. First, assuming the verdict was inconsistent, "a defendant cannot challenge his conviction merely because it is inconsistent with a jury's verdict of acquittal on another count." *United States v. Thomas*, 900 F.2d 37, 40 (4th Cir. 1990) (citing *United States v. Powell*, 469 U.S. 57 (1984)). Perry contends, however, that the inconsistency likely evinces jury confusion due to improper instructions and a faulty verdict sheet.[10] He asserts that the instructions and the verdict sheet permitted the jury to convict him of the § 1512(b)(3) offense if the jury found that he engaged in misleading conduct to "hinder, delay, or prevent" a police investigation of any type, rather than solely a federal investigation. We disagree.

The instructions were clear that, in order to convict under § 1512(b)(3), the jury was required to find that, when Perry provided the MCPD with a false name and a false date of birth, he intended to

---

We also decline to adopt Perry's suggestion that we read § 1512(b)(3) to require that federal officials actually receive the misleading information. The statute itself applies to one who engages in misleading conduct with an *intent* to "hinder, delay, or prevent" communication with federal law enforcement officers. It does not require that the individual have succeeded. Accordingly, this challenge to Perry's conviction is likewise meritless.

[10]Because Perry did not properly object to the instructions or verdict sheet, were he to challenge their propriety directly, we would review only for plain error. *See United States v. Nicolaou*, 180 F.3d 565, 569 (4th Cir. 1999). Perry instead asserts that the court erred in refusing to award him a new trial, since the inconsistent verdict was likely the result of improper instructions and an improper verdict sheet. This challenge was properly raised below, and we thus review for abuse of discretion. *See Arrington*, 757 F.2d at 1486.

prevent it "from communicating with agents of the [ATF] and the United States Department of Justice and judges of the United States of America information relating to the commission and possible commission of a . . . [f]irearm offense committed in violation of Title 18, United States Code Section 922(g)." J.A. 194. Throughout the instructions, the court reiterated the requirement that the communication Perry intended to prevent must have related to a federal offense.[11] Because we are unable to discern any incorrect statement of law in the instructions, the court did not abuse its discretion in declining to award a new trial on this basis.

Perry also asserts that the verdict sheet was improper because it described the § 1512(b)(3) offense as "[e]ngaging in misleading conduct with intent to hinder, delay or prevent a police investigation." Perry contends that this description was erroneous because it permitted the jury to convict him on the basis of a finding that he provided false information to influence a traffic investigation. The court, however, made clear in its instructions that the predicate investigation must be federal. Specifically, it instructed the jury that Perry must have intended to prevent the MCPD "from communication to agents of the ATF [about a] [f]irearm offense committed in violation of Title 18, United States Code Section 922(g)." Accordingly, viewing the verdict sheet and the instructions as a whole, we discern no error. *See United States v. Brown*, 330 F.3d 1073 (8th Cir. 2003) (concluding that "jury instructions and verdict form viewed as a whole did not allow the jury to convict" the defendant of charge different than that

---

[11]In its instructions, the court emphasized that, in order to convict Perry under § 1512(b)(3), the jury was obliged to find that the communication that Perry intended to hinder, delay, or prevent related to the possible commission of a federal offense. *See, e.g.*, J.A. 195 ("In order to prove the defendant guilty of [witness tampering], the Government must prove . . . the defendant acted . . . with intent to hinder, delay or prevent the communication to a [federal law enforcement officer] information related to the commission or possible commission of a *federal offense*." (emphasis added); J.A. 196-197 ("The Government must prove that the defendant intended . . . to hinder, delay or prevent the communication of information as to his identity to a law enforcement officer or judge as that information related to the commission or possible commission of [the federal offense of] unlawful possession of a firearm by a person who had previously been convicted of a [felony].").

contained in indictment); *United States v. Poirier*, 321 F.3d 1024, 1032 (11th Cir. 2003) ("On appeal, we examine whether the jury instructions and verdict form, considered as a whole, were sufficient so that the jurors understood the issues and were not misled." (internal quotation marks omitted)).[12]

### C.

Finally, Perry contends that a presumption of prosecutorial vindictiveness arose when the Government added a witness tampering charge in the superseding indictment after Perry exercised his right to seek a mistrial. The Government responds that no such presumption is warranted when, as here, a mistrial is declared (1) without opposition, and (2) merely as a result of a deadlocked jury.

A defendant's right to due process "requires that there be no vindictiveness against [him] for having chosen to exercise [his] constitutional rights." *United States v. Whaley*, 830 F.2d 1469, 1477 (7th Cir. 1987) *abrogated on other grounds as recognized in United States v. Durrive*, 902 F.2d 1221, 1228 (7th Cir. 1990) (citing *North Carolina v. Pearce*, 395 U.S. 711, 723-25 (1969)). Because motives are often "difficult to prove," the Supreme Court has determined that, "in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right . . . it [is] necessary to 'presume' an improper vindictive motive." *Goodwin*, 457 U.S. at 373. Such a presumption, however, is only warranted "in cases in which a reasonable likelihood of vindictiveness exists." *Id.*

Moreover, a presumption of prosecutorial vindictiveness is generally warranted only in a post-conviction setting, such as when a defendant successfully attacks his conviction on appeal, and then receives a harsher sentence on retrial. *See Pearce*, 395 U.S. at 726. Courts have been extremely cautious in applying the presumption in the pretrial context. For example, the Supreme Court has held that a

---

[12]Perry also asserts that the court erred in denying his motion for a new trial because the verdict was against the weight of the evidence. As discussed *supra*, Part III.A, the evidence supports a conviction on the § 1512(b)(3) charge, and accordingly, the court did not abuse its discretion in denying Perry a new trial on this basis.

presumption of prosecutorial vindictiveness does not arise when the Government carries out a threat, made during plea negotiations, to file additional charges against an accused who declines to plead guilty. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). Accordingly, we must assess whether the lodging of a new charge following an unopposed mistrial resulting from a deadlocked jury is more akin to the post-trial or the pre-trial prosecutorial vindictiveness decisions. In this regard, the Seventh Circuit has recognized that a post-mistrial charging decision "seems to fall between the pretrial-postconviction dichotomy established by the Supreme Court." *Whaley*, 830 F.2d at 1478.

In determining whether a presumption of vindictiveness may appropriately be applied in the mistrial setting, we must look to the basis for the mistrial. *Id*. In this case, the mistrial resulted from a jury deadlock. And we have observed that there is "no realistic likelihood of vindictiveness . . . when a jury is deadlocked and both parties agree that a declaration of mistrial is a necessity." *United States v. Fiel*, 35 F.3d 997, 1007-08 (4th Cir. 1994) (quoting *Whaley*, 830 F.2d at 1478-79); *see also United States v. Khan*, 787 F.2d 28, 32-33 (2d Cir. 1986); *United States v. Mays*, 738 F.2d 1188, 1190 (11th Cir. 1984). As the Eleventh Circuit has observed, the prosecutorial vindictiveness presumption is rooted in the notion that a defendant may not be punished for the exercise of his rights. *Mays*, 738 F.2d at 1190. Because the unopposed mistrial resulting from the deadlocked jury did not arise from Perry's exercise of a protected right, but rather was based on trial events largely beyond his control, there is no reason to presume that the United States Attorney was "punishing" Perry by filing a new charge against him.[13] Under such circumstances, no "reason-

---

[13]Because Perry's motion for a mistrial was unopposed, we need not reach the question of whether such a presumption might be warranted when the Government opposes such a motion. *See United States v. Motley*, 655 F.2d 186, 188-89 (9th Cir. 1981) (holding presumption of vindictiveness warranted where defendant was reindicted on more severe charges after court granted, over Government's objection, defendant's motion for mistrial on basis of deadlocked jury).

able likelihood of vindictiveness exists," *Goodwin*, 457 U.S. at 373, and the presumption of prosecutorial vindictiveness is not warranted.

## IV.

Pursuant to the foregoing, we affirm Perry's conviction for federal witness tampering.

*AFFIRMED*