Gerald BALDYGA, Petitioner

v.

UNITED STATES of America,
Respondent.

No. CIV.A.02–40244–NMG.

United States District Court,
D. Massachusetts.

June 8, 2004.

Gerald Baldyga, Elkton, OH, Pro se.

John M. Hodgens, Jr, U.S. Attorneys Office, Worcester, MA, for Respondent.

## MEMORANDUM & ORDER

GORTON, District Judge.

Pending before the court is the petition of Gerald Baldyga ("Baldyga") to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255.

### I. *Background*

On March 25, 1999, after a four-day trial before this Court a jury convicted the petitioner of four counts of possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), one count of being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1), and one count of tampering with a witness in violation of 18 U.S.C. § 1512(b)(3). On July 15, 1999, the Court sentenced Baldyga to 97 months imprisonment. The First Circuit Court of Appeals affirmed Baldyga's conviction on December 7, 2000 and denied a motion for rehearing en banc on January 12, 2001. *United States v. Baldyga,* 233 F.3d 674 (1st Cir.2000). The Supreme Court of the United States denied certiorari in this matter on October 1, 2001.

On June 21, 2001, Baldyga filed a *pro se* petition for a writ of mandamus and motion for injunction without forfeiture, which the Court dismissed and denied respectively. On December 17, 2002, Baldyga filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2254. The government filed its opposition to that motion on January 7, 2003.

In the intervening months, Baldyga filed numerous additional motions in this matter including, on February 2, 2003, a response to the government's opposition, on May 12, 2003, a motion to correct sentence, on June 24, 2003, a motion for leave to attach issues to the habeas petition, on September 16, 2003, a motion seeking the court to order the United States Attorney to respond to Baldyga's papers and on October 7, 2003 a "notice of default and dishonor." Because these motions are essentially supplements to the original § 2255 petition, the Court will treat them collectively with the original petition for habeas corpus, as "the § 2255 petition." Baldyga also filed, on October 27, 2003, a motion to recuse the presiding judge of this session of the United States District Court.

In addition to his § 2255 petition Baldyga has filed a number of motions in his finally-adjudicated criminal case. Between March 10, 2003 and October 27, 2003, Baldyga filed a motion for miscellaneous relief from his sentence, a motion to amend or correct his sentence, a motion to compel the government to answer his claims, a motion to request an order of the court, a second motion to compel the government to respond and another motion seeking the recusal of the presiding judge. In addition, on December 10, 2003, Baldyga filed a "motion re: Judicial Misconduct" in which he accused the Chief Judge of the

District of Massachusetts of judicial misconduct.

## II. *Argument*

### A. *Baldyga's Petition for Habeas Corpus and Supplemental Motions*

A federal prisoner may base a claim for relief under 28 U.S.C. § 2255 on four possible grounds:

1) the sentence was imposed in violation of the Constitution or laws of the United States;

2) the court was without jurisdiction to impose such sentence;

3) the sentence was in excess of the maximum authorized by law; and

4) the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255. The Supreme Court has narrowly defined the availability of § 2255 relief where the petitioner does not allege constitutional or jurisdictional errors. Such claims can be made under § 2255 only if:

the claimed error is a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with rudimentary demands of fair procedure.

*Knight v. United States*, 37 F.3d 769, 772 (1st Cir.1994)(quoting *Hill v. United States*, 368 U.S. 424, 426–27, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

Although Baldyga's § 2255 petition is difficult to disentangle, he basically argues that his conviction and sentence should be set aside on four grounds: 1) that his Fourth Amendment rights were violated when the police searched his home with an invalid warrant, 2) that he was wrongfully arrested by federal employees while in state custody without a warrant and illegally taken to a federal prison, 3) that his trial was conducted under a massive conspiracy between the police, the Drug Enforcement Agency, the prosecution, his defense attorney and the Court and 4) that he had ineffective assistance of counsel during his trial in violation of his Sixth Amendment rights.

#### 1. The Alleged Invalid Search Warrant

■ Baldyga claims that his conviction should be overturned because the police did not have valid warrants to search his home. The Court addressed the Fourth Amendment issues in this case prior to trial, holding, after a March 18, 1999 suppression hearing, that the police had probable cause to search Baldyga's home and outbuildings and that both warrants issued were valid. In his § 2255 petition, Baldyga argues that the warrants used to search his property were illegal. His precise argument is difficult to decipher, but he essentially alleges that the affidavit in support of the application for a warrant used in connection with his March 1, 1998 arrest was falsified and that his constitutional rights under the Fourth Amendment were therefore violated.

A Fourth Amendment claim is improperly raised in a § 2255 petition. The Supreme Court of the United States held in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), that a state prisoner who has had a full and fair opportunity to litigate Fourth Amendment issues at trial was precluded from relitigating those same issues on collateral attack. *See also, Arroyo v. United States*, 195 F.3d 54 (1st Cir.1999). While neither the Supreme Court nor the First Circuit has yet addressed the issue, courts in the District of Massachusetts have often held that the same rule applies to petitioners convicted of federal crimes. *See, Kiley v. United States*, 260 F.Supp.2d 248, 275 (D.Mass. 2003); *Owens v. United States*, 236 F.Supp.2d 122, 133 (D.Mass.2002).

Baldyga litigated his Fourth Amendment issues at both the March 18, 1999 suppression hearing and during the appeal of his conviction to the First Circuit. Accordingly, he is precluded from arguing Fourth Amendment claims in his § 2255 petition and as to those issues, his petition for habeas corpus will be dismissed.

### 2. The Alleged Illegal Arrest

■ Baldyga argues that his March 2, 1998 arrest was illegal because the warrant that lead to his arrest was issued by the state court and he was eventually charged with a federal crime. He maintains that his removal from the "subject matter jurisdiction" of the Commonwealth of Massachusetts and the Town of Dudley court system to the federal court system and the Wyatt facility in Central Falls, Rhode Island was illegal and constituted kidnapping (because he was transported across state lines). In order for such a claim to be litigated in a habeas corpus petition, it must fall under one of the provisions of 28 U.S.C. § 2255 cited above. Here Baldyga argues that he was "denied due process and liberty" in violation of his Constitutional rights.

Baldyga's claim is neither supported by the record nor by any evidence. It is relatively common for a prisoner to be transferred from state to federal custody after the nature of his offense becomes clear. The evidence in the instant case shows that Baldyga was afforded due process of law in the federal system. On March 2, 1998, an agent of the Drug Enforcement Agency ("DEA"), Michael Pevarnik, appeared before federal Magistrate Judge Charles B. Swartwood and swore out a criminal complaint with respect to Baldyga's drug-related activity. On that same day Magistrate Judge Swartwood issued a warrant for Baldyga's arrest. After the warrant was issued, Baldyga was taken into federal custody on March 3, 1998, and made his initial appearance before Magistrate Judge Swartwood on that date. Because Baldyga received due process of law in this matter, his constitutional rights were not violated and accordingly, the § 2255 petition as to this issue will be dismissed.

### 3. The Alleged Conspiracy

■ Baldyga's next claim is that, essentially, his conviction resulted from a massive conspiracy between the prosecutor, the DEA Agent, his own defense attorney and this Court. It is not possible to glean from Baldyga's voluminous papers specific facts offered to support this claim. Two arguments are clear: 1) that the replacement of his original, court-appointed attorney, Peter Ettenberg by Attorney Martin Boudreau was because Mr. Ettenberg "questioned legalities" and 2) that this Court demonstrated bias towards Baldyga throughout the trial.

Baldyga claims that his original court-appointed attorney, Peter Ettenberg, was replaced by Attorney Boudreau because the latter was a former prosecutor, a friend of the Chief of Police of the Town of Webster and because Ettenberg was challenging the legality of Baldyga's arrest. According to the petitioner, "the fix was in." A review of the record, however, disproves his assertion. At the time of Baldyga's initial appearance he was represented by a court-appointed attorney (Ettenberg). However, Mr. Ettenberg was on trial and unavailable to render legal assistance until March 17, 1998. Because Baldyga's detention hearing was scheduled for March 6, 1998, Magistrate Judge Swartwood appointed Attorney Boudreau as counsel instead. The substitution arose from a scheduling conflict not a conspiracy against the petitioner.

Regarding petitioner's assertion of the Court's bias, this Court will let the record, including Baldyga's voluminous pleadings and the transcripts of the hearings and trial, speak for itself. In his § 2255 petition Baldyga cites three instances in which this Court allegedly made biased remarks. The record of the trial transcript shows, however, that the cited remarks were either taken wholly out of context or are figments of the petitioner's imagination.

Baldyga's first claim is that at the March 18, 1999 suppression hearing the Court stated, in response to an indication that the prosecution was not going to present any tapes as evidence, "I am not interested in what you are, or are not going to show at trial." *Affidavit of Gerald Baldyga In Support of 2255 Motion,* (hereafter "Affidavit") at 11. The petitioner argues that the quoted statement is proof that the Court was "essentially throwing the Federal Rules of Evidence right out the window, and giving free reign for malicious prosecution." *Affidavit,* at 11–12.

A review of the transcript of the suppression hearing reveals that, in fact, the prosecution had brought up a tangential issue of whether it would offer a gas mask as evidence at the trial. The Court responded that, "We're not here to worry about what you're going to offer and not offer at the trial." *Transcript of March 18, 1999 Hearing on Motion to Suppress,* at 61–62. Rather than indicating an intent to disregard the Federal Rules of Evidence at the trial, the statement was made to focus the prosecutor's attention on the suppression hearing and to defer collateral matters until the time of trial.

Baldyga also claims that:

right before the jury went out to deliberate, Judge Gorton told the court clerk "to shut off the tape" and then instructed the jury "to ignore dates on paper-

work ... [and] that it doesn't matter, a day this way or that."

*Affidavit,* at 12. After a diligent search, this Court finds no such language or implication in the transcript. Regarding the petitioner's contention that the Court told the jury to disregard dates, the only possible statement to which the contention could refer is the Court's instruction to the jury that:

You will note that the indictment charges that the offense was committed on or about a certain date rather than on a certain date. The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the date alleged.

*Transcript of Day Four of Jury Trial, March 25, 1999,* at 50. That is a standard instruction to a jury, *See, United States v. Morris,* 700 F.2d 427 (1st Cir.1983), and not evidence of the Court's bias against the petitioner.

Baldyga finally claims that, at his sentencing hearing, the Court stated, at the end of the discussion on the drug amount, "This whole case has been based on speculation, but I'll side with prosecutor, we'll call it 500 grams." *Affidavit,* at 12–13. At Baldyga's sentencing on July 15, 1999 there was a dispute about the quantity of drugs for which the defendant was to be held accountable. The transcript reflects that the Court made a finding that the defendant was responsible for "not less than 500 grams of cocaine." *Sentencing transcript for July 15, 1999,* (hereafter "Sentencing") at 38.

The Court reviewed a list of cocaine sales attributed to the petitioner, and found that he had sold 250 grams, 126 grams, 88 grams and 115 grams to four

separate individuals. The Court then concluded that the defendant:

> expressed an ability to produced 30 plus 8–balls of cocaine ... [and] all of these numbers—I don't have the exact amount it adds up to, but it is considerably in excess of 500 grams of cocaine.

*Sentencing,* at 39. While a more precise finding would have been preferable, the Court's statement is· not evidence of bias or a conspiracy against the defendant.

In sum, Baldyga's theory of a massive conspiracy is not borne out by the evidence and his petition with respect to that issue will be dismissed.

### 4. The Alleged Ineffective Assistance of Counsel

Baldyga's final assertion in his § 2255 petition is that his Sixth Amendment rights were violated by ineffective assistance of counsel at his trial. He claims that Attorney Boudreau was ineffective in failing to object to the jury instructions and, specifically, that the Court did not instruct the jury that it must find that the law enforcement officials involved were federal agents in order to sustain one of the charges. Baldyga raised that issue in his direct appeal to the First Circuit, *See United States v. Baldyga,* 233 F.3d 674 (1st Cir.2000), and, while the First Circuit found this omission was "plain error", it also held that, based on the evidence of involvement of federal officials presented at trial, "we cannot conclude that the jury rationally could have made a contrary finding with respect to the element omitted from the instructions." *Id.* at 682.

The petitioner now maintains that Attorney Boudreau's failure to object to the omitted instruction constitutes ineffective assistance of counsel. He is mistaken. In *Strickland v. Washington,* 466 U.S. 668, 686–687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) the Supreme Court articulated a two-pronged test to determine whether the Sixth Amendment right to effective assistance of counsel has been violated. First, the performance of counsel must be shown to be deficient, and second, the deficient performance must be shown to have prejudiced the defense such that there is a reasonable possibility, that, but for counsel's errors the result below would·have been different. *Id.* In the instant case, the First Circuit clearly stated that Attorney Boudreau's failure to object did not prejudice the defense. As such, it is unnecessary to delve further into the issue of the attorney's performance. The § 2255 petition with respect to ineffective assistance of counsel will be dismissed.

Because none of the grounds raised by Baldyga in his petition for habeas corpus can be sustained, the entire petition will be dismissed.

### B. *Baldyga's Motion for Recusal*

■ On October 22, 2003, Baldyga filed a motion requesting that the judge presiding over this session recuse himself from considering this habeas petition:

> due to his conflict of interest, due to his biased and prejudicial remarks, ·obstruction of justice in jury instruction, lack of fairness, failure to promote judicial integrity in scrutinizing paperwork and testimony, allowing prosecution to move this case before the court without proper jurisdiction, allowing his personal influence to bestow favoritism to the prosecution, which resulted in an unconstitutional conviction... [and] since then, delaying and preventing this petitioner from timely redress of grievances.

To address the final complaint first, more than one year has elapsed·since the filing of Baldyga's original § 2255 petition. The delay was partially due to this Court's

clerical procedure of not addressing issues until 30 days after the last motion has been filed. In the instant case, the petitioner's near-monthly submissions of addendums and supplements to his petition caused the continuous resetting of the clock. That is not an excuse for the inordinate and regrettable delay but neither is it grounds for judicial recusal.

Two sections of Title 28 of the United States Code (§ 144 and § 455) govern the matter of recusals. Delay in the consideration of a pending motion is not a reason cited in either section or in any case law. The Court will not recuse itself on that ground.

Baldyga's other accusations are more serious. The petitioner's charges of bias and prejudice are vague, rambling and, ultimately, unfounded. The decision to grant or deny a motion for disqualification is committed largely to the discretion of the trial court. *United States v. Giorgi,* 840 F.2d 1022, 1034 (1st Cir.1988). Reading 28 U.S.C. §§ 144 and 455 together, a judge may be disqualified from a case if: 1) his partiality may be reasonably questioned or 2) he has a personal bias or prejudice concerning a party. *United States v. Kelley,* 712 F.2d 884, 889 (1st Cir.1983). There must be a factual basis for the claim that there appears to be a lack of impartiality, *United States v. Voccola,* 99 F.3d 37 (1st Cir.1996), and recusals are not to be granted without cause. *Id.* at 42.

Nowhere in his papers does Baldyga allege *facts* sufficient to establish partiality or prejudice on the part of the Court. As an examination of the record *supra* demonstrates, Baldyga has taken judicial comments out of context and made up others to construct his charge of bias. Baldyga is obviously frustrated with the outcome of his jury trial. However, he has asserted only theories of conspiracy without facts to support them. As such, the presiding judge declines to recuse himself from this matter.

### C. *The Motions in Baldyga's Criminal Case*

In addition to the motions discussed *supra,* Baldyga has filed a number of motions in his criminal case, 98–cr–40011. That case has been adjudicated by this Court, by the First Circuit Court of Appeals and has been reviewed the United States Supreme Court. Because the case has been finally decided, this Court has no jurisdiction to rule on these motions. All motions filed by Baldyga in that case will, therefore, be denied as moot.

### ORDER

For the reasons stated in the foregoing memorandum, motions filed in connection with Baldyga's 28 U.S.C. § 2255 petition (Docket Nos. 5, 6, 7, 8, 9, 10, 11, 12) are DENIED, Baldyga's motion for recusal (Docket No. 13) is DENIED, Baldyga's motions filed in Criminal Action 98–40011–01–NMG (Docket No. 135, 137, 141, 142, 142) are DENIED AS MOOT, and the Petition for Habeas Corpus (Docket No. 1) is DISMISSED.

**So ordered.**